ORIGINAL

# In the United States Court of Federal Claims

No. 14-705C
Filed: March 19, 2015

**FILED**

MAR 19 2015

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * *
                                  *
NICHOLAS HARRISON,               *
                                  *
          Plaintiff,             *
                                  *
     v.                          *
                                  *
UNITED STATES,                   *
                                  *
          Defendant.             *
                                  *
* * * * * * * * * * * * * *
```

<u>Pro Se</u> Plaintiff; Lack of Subject
Matter Jurisdiction; Presidential
Management Fellows Program.

**Nicholas Harrison**, Washington, D.C., <u>pro se</u> plaintiff.

**Alexis J. Echols**, Trial Attorney, with whom were **Benjamin C. Mizer**, Acting Assistant Attorney General, **Robert E. Kirschman, Jr.**, Director, and **Donald E. Kinner**, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for the defendant. Of counsel, **Karen H. Holzen**, Trial Attorney, United States Small Business Administration.

## O P I N I O N

<u>**HORN, J.**</u>

### FINDINGS OF FACT

<u>Pro se</u> plaintiff Nicholas Harrison[1] filed a complaint in this court. As the basis for this court's jurisdiction, plaintiff cites the Tucker Act, 28 U.S.C. § 1491 (2012) and asserts "employment rights in contract." In his complaint, plaintiff states that he "was induced to take a position with the U.S. Small Business Administration [SBA] as part of the Presidential Management Fellows Program [PMF Program]." Plaintiff indicates he "was offered the position on June 20, 2013 pending a satisfactory background check," and he accepted the position on June 25, 2013, the same day his background check

---

[1] Plaintiff represents to the court that he is "a licensed attorney in the State of Oklahoma." Therefore, although Mr. Harrison filed his complaint <u>pro se</u>, his complaint and allegations can be judged by the standards due to filings by a licensed attorney, and not under the more liberal standards applicable to a non-attorney <u>pro se</u>. <u>See</u> Haines v. Kerner, 404 U.S. 519, 520–21, <u>reh'g denied</u>, 405 U.S. 948 (1972). Regardless, under either standard, as determined below, plaintiff's complaint does not properly allege claims for which there is jurisdiction in this court.

was completed. In the documents plaintiff submitted to the court, there are two letters, identified by plaintiff as offer letters. The first letter was from Kia P. Wyche, a Human Resources Specialist at the SBA, to plaintiff, dated June 25, 2013, congratulating him on his "selection to the excepted service position of, Veteran Affairs Specialist (Presidential Management Fellow) for Veterans Business Development within the U.S. Small Business Administration (SBA) in Washington, D.C." The Wyche letter concludes by providing a phone number to plaintiff should he "have any questions concerning your appointment," and providing "[b]est wishes in your new appointment." Plaintiff contends in his response to the court's Order to produce supporting documents that he "cannot vouch for the accuracy of this document as the one received, executed, and returned to the agency was different." The Wyche letter was produced by the SBA Office of Human Resources, in accordance with the court's Order.

The second letter to plaintiff, which plaintiff indicates was the letter he received, was from Bridget Bean, Chief Human Capital Officer at the SBA, and was dated June 20, 2013. This second letter indicated "[y]ou are being considered for a Presidential Management Fellows position" and that the "offer is tentative pending the approval of your preliminary employment security paperwork." The Bean letter further indicated that the "*Presidential Management Fellows position is an excepted service appointment*[2]" (emphasis in original) and that "[u]pon entrance on duty, your appointment will be subject to the successfully [sic] completion of a two-year probationary period, a two year Individual Development Plan (IDP), and a background character investigation that will be conducted by the Office of Personnel Management." The Bean letter stated that "[u]pon your acceptance of this offer, an effective date of your appointment will be established." The copy of the Bean letter in the record provides at the bottom, "I accept the above offer" and the place designated for signature reflects the plaintiff's written signature.[3] It appears from subsequent email correspondence between plaintiff and Ms. Wyche, also included in the record, that, on June 20, 2013, plaintiff emailed back to Ms. Wyche a copy of this second letter. From the record, it appears Mr. Harrison sent Ms.

---

[2] Section 2103 of Title 5 of the United States Code indicates that "[f]or the purpose of this title, the 'excepted service' consists of those civil service positions which are not in the competitive service or the Senior Executive Service." 5 U.S.C. § 2103 (2012). Section 213.101 of Title 5 of the Code of Federal Regulations (CFR) defines "excepted service" as:

> the meaning given that term by section 2103 of title 5, United States Code, and includes all positions in the executive branch of the Federal Government which are specifically excepted from the competitive service by or pursuant to statute, by the President, or by the Office of Personnel Management, and which are not in the Senior Executive Service.

5 C.F.R. § 213.101 (2013).

[3] As reflected in the Bean letter, and as plaintiff indicates, plaintiff "incorrectly dated" the Bean letter, next to plaintiff's signature, as May 20, 2013.

Wyche an email on June 20, 2013, with the subject line "Re: SBA Offer Letter (PMF)," that indicates: "Here is the acceptance letter."

The record reflects that, thereafter, the SBA issued a United States Office of Personnel Management (OPM) Standard Form 50, Notification of Personnel Action (Standard Form 50) on July 1, 2013, with respect to plaintiff's appointment to his position at the SBA. This Standard Form 50 provided that Mr. Harrison was appointed to "EXC APPT" under the legal authority of "SCH [Schedule] D, 213.3402(C)."[4] The remarks in this Standard Form 50 indicated "APPOINTMENT AFFIDAVIT EXECUTED: 7/1/2013" and that:

> THIS APPOINTMENT IS INTENDED TO CONTINUE FOR TWO YEARS. UPON SATISFACTORY COMPLETION OF 2-YEAR TRIAL PERIOD, YOU WILL BE NONCOMPETITIVELY CONVERTED TO CAREER-CONDITIONAL OR CAREER APPOINTMENT. IF PERFORMANCE IS NOT SATISFACTORY OR YOU FAIL TO SATISFACTORILY COMPLETE PROGRAM, EMPLOYMENT WILL BE TERMINATED. APPOINTMENT IS SUBJECT TO COMPLETION OF ONE YEAR TRIAL PERIOD BEGINNING 07/01/13.

(all capitalization in original). Regarding this Standard Form 50, plaintiff asserts in his response to the court's order to produce supporting documents that plaintiff had not previously seen this document before it was produced by the agency in the proceedings before this court.

Plaintiff alleges in his complaint that the PMF Program is:

> not a typical federal employment arrangement, but it is more of a "bargained for exchange" where an agency secures access to the best and brightest graduate / professional degree candidates who would not otherwise consider federal service (the top two-tenths of one percent of the hiring pool) in return for various inducements.

---

[4] PMF Fellows are appointed pursuant to section 213.3402(c) of Title 5 of the CFR, which provides that, for PMF Program positions:

> Appointments under this authority may not exceed 2 years except as provided in subpart D of part 362 of this chapter. Agencies may make initial appointments of Fellows at the GS–09, GS–11, or GS–12 [General Schedule] level (or equivalent under another pay and classification system such as the FWS [Federal Wage System]), depending on the candidates' qualifications and the positions' requirements. Appointments must be made in accordance with the provisions of subpart D of part 362 of this chapter.

5 C.F.R § 213.3402(c) (2013).

Plaintiff also states:

> Under the program, a Presidential Management Fellow essentially agrees to work for an agency as a paid intern for about a year and the agency agrees to bring the fellow in at a higher grade, to provide extensive education and training, and to pay for one or two other internships with different offices / agencies in the federal government during the second year – after which the Presidential Management Fellow is eligible for a non-competitive conversion to a permanent position, usually at one of the agencies he or she has worked for.

Furthermore, in his complaint, plaintiff outlines the "inducements" he alleges were offered to him as part of the PMF Program, including:

> (a) Initial employment in a GS-11 position on a career ladder track with eligibility for promotion to GS-12 at the end of one year and eligibility for conversion to a permanent GS-13 position at the end of two years. (higher grade)
> (b) Eighty hours of formal classroom training during each year of the fellowship. (education and training)
> (c) At least one external developmental assignment of 4 to 6 months and "a reasonable amount of time during work hours for other PMF activities, as appropriate, such as rotational assignments of 1 to 6 months in other occupations or functional areas." (one or two other internships with different offices / agencies)
> (e) [sic] 10 paid federal holidays, 6 hours of paid annual leave and 4 hours of paid sick leave each pay period, and 15 days of paid military leave each year.

Plaintiff also asserts that throughout his fellowship, he

> raised his concern that he was not being given the opportunity to do the developmental and rotational assignments and the formal classroom training, but he was repeatedly reassured by both, his office and human resources personnel, that the agency would come through during the second year of the fellowship and it was normal to "front-load" the fellowship with work in the assigned office.

Plaintiff states that he "even raised the concern that he might be fired after performing all of the work and he was reassured by the Associate Administrator, 'Do you think I would let that happen.'" Plaintiff contends that "[a]t his office's request, the Plaintiff also traveled extensively and deferred taking any leave or comp time during the first year – accruing about 65 hours of comp time and 135 hours of leave." Plaintiff alleges that "[a]s late as June 10, 2014, the Plaintiff was still being asked by his office to push back the developmental and rotational assignments and the formal classroom training – to

continue to work for the office through January 1, 2015 because they still couldn't afford to lose him yet."

According to plaintiff, "[o]n June 13, 2014, the office terminated the Plaintiff to avoid providing the other inducements that he was offered as part of the two-year program" and, "[a]t the time of his firing, the Plaintiff had 54 weeks remaining on his fellowship." Plaintiff asserts that:

> The other inducements that the Plaintiff should have received constitute the 54 weeks remaining in his fellowship:
> (a) The Plaintiff had accumulated approximately 65 hours of comp time and 135 hours of leave. (5 weeks)
> (b) The Plaintiff was scheduled to go on about 120 hours of military leave to fulfill his National Guard obligations on the following week. (3 weeks)
> (c) The Plaintiff was still owed 40 hours of formal classroom training during the first year and he would have required an additional 80 hours of formal classroom training during the second year. (3 weeks)
> (d) The Plaintiff would have been gone for 6 - 8 months for the developmental and rotational assignments during the second year. (34 weeks)
> (e) The Plaintiff would have accumulated 150 hours of leave during the second year. (4 weeks)
> (f) The Plaintiff would have accumulated 120 hours of military leave during the second year. (3 weeks)
> (g) There are 10 federal holidays during the year. (2 weeks)

Among the documents plaintiff submitted to the court was a copy of a United States OPM Standard Form 52, titled "**REQUEST FOR PERSONNEL ACTION**," (emphasis and capitalization in original), which stated, "Actions Requested," "TERMINATION." (capitalization in original). The document also indicated the reason as "[t]erminated during probationary period." A copy of a Standard Form 50, Notification of Personnel Action, in the record, issued with respect to plaintiff's termination, provided that the action was "TERM DURING PROB/TRIAL PERIOD" and cited the legal authority as "REG 315.804 MIX."[5] (all capitalization in original). In addition, the record

---

[5] Section 315.804 of Title 5 of the CFR covers "**Termination of probationers for unsatisfactory performance or conduct**," (emphasis in original), and provides:

> (a) Subject to § 315.803(b), when an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action. The information in the notice as to why the employee is being terminated shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct.

includes a letter, dated June 11, 2014, from the SBA's Barbara E. Carson, Deputy Associate Administrator of the Office of Veterans Business Development, to Mr. Harrison. The letter provides, in relevant part:

> On July 1, 2013, you received an Excepted Service appointment as a Veterans Affairs Specialist, GS-1101-11, step 1, in the U.S. Small Business Administration, Office of Veterans Affairs. Your appointment was subject to the successful completion of a two-year trial period beginning July 1, 2013. The trial period is the final step in the examination process of an employee. It is the time in which an employee has the opportunity to demonstrate, through actual performance and/or conduct, their fitness or qualifications for continued employment.
>
> During this trial period, it has been determined that your continued employment does not promote the efficiency of the service. Therefore, in accordance with Title 5 of the Code of Federal Regulations §315.804, you are hereby notified that your employment with the U.S. Small Business Administration (SBA) is being terminated effective close of business **Friday, June 13, 2014** for unacceptable conduct.

(emphasis in original). The June 11, 2014 letter informed plaintiff regarding his right to appeal the termination action and stated:

> You have the right to appeal this action to the Merit Systems Protection Board (MSPB) within 30 calendar days of the effective date of this termination if you believe that you were terminated for partisan political reasons or because of your marital status. In addition, you may appeal to the Board if you believe that the proper procedures for terminating a probationary employee have not been followed. The procedures for filing an appeal with MSPB are attached to this letter or/and may be viewed at www.mspb.gov.

Moreover, the June 11, 2014 letter informed plaintiff that:

> You have the right to contact an Equal Employment Opportunity counselor and to file a complaint through the discrimination process within 45 days of termination if you believe that you are being terminated because of race,

---

(b) Probation ends when the employee completes his or her scheduled tour of duty on the day before the anniversary date of the employee's appointment. For example when the last workday is a Friday and the anniversary date is the following Monday, the probationer must be separated before the end of the tour of duty on Friday since Friday would be the last day the employee actually has to demonstrate fitness for further employment.

5 C.F.R. § 315.804 (2014).

color, religion, national origin, disability, age, or in retaliation for your previous participation in the EEO process.

The June 11, 2014 letter also provided, "[f]or further information as to your rights, you may contact Mr. Stevie Gray, Lead Human Resources Specialist (ER/LR) in the Workforce Relations Branch, Office of Human Resources Solutions" and provided Mr. Gray's contact information. In conclusion, the June 11, 2014 letter instructed: "Please sign the acknowledgement of receipt below. Your signature does not indicate agreement with this action; it only represents receipt of this notice on the date signed with the attached enclosures." The copy of the June 11, 2014 letter in the record before the court appears to contain Mr. Harrison's signature after "Acknowledge [sic] of Receipt" and, next to his signature, the date "6/11/2014."

In his complaint in this court, plaintiff alleges that the United States Government entered into an "implied contract for the duration of the two-year fellowship" based on "[t]he nature of the Presidential Management Fellows Program, the de facto practices of the U.S. Small Business Administration, and the repeated assurances offered by his office and by the agency's human resources personnel . . . ." Plaintiff further alleges that his "substantial performance during the first year creates an option contract requiring the U.S. Small Business Administration to hold open the promise of continued employment for the remainder of the fellowship." Plaintiff also claims that the "Defendant's termination of the Plaintiff to avoid providing the other inducements that he was offered as part of the two-year program constitutes a breach of the implied covenant of good faith and fair dealing." Finally, plaintiff seeks to rely on the equitable doctrine of promissory estoppel, arguing

> [t]he inducements that the Plaintiff was offered as part of the Presidential Management Fellows Program and the assurances offered by the U.S. Small Business Administration caused the Plaintiff to change his position substantially to the Defendant's benefit (triggering promissory estoppel) and injustice can only be avoided by enforcing the promised inducements remaining under the fellowship.[6]

Plaintiff requests relief in the form of a "judgment against the Defendant" and asks that "the Court compels [sic] the U.S. Small Business Administration to provide inducements that the Plaintiff was offered as part of the Presidential Management Fellows Program," including, in part, to "[r]einstate the Plaintiff in the Presidential Management Fellows Program for the 54 weeks remaining on his fellowship," provide back pay, restore certain compensatory and other time, provide plaintiff with formal classroom training, and allow plaintiff to set up developmental rotational assignments with other agencies. Alternatively, plaintiff requests "monetary damages against the

---

[6] From the parties' filings, it appears that plaintiff has initiated other actions seeking to resolve his termination and related matters, in addition to filing the above captioned case in this court. Plaintiff indicates that he "filed a whistleblower complaint with the Office of Special Counsel" and "also filed a complaint with the Government Accountability Office for numerous waste, fraud, and abuse issues."

U.S. Small Business Administration in the amount of $121,764.68 . . . ." Plaintiff also requests attorney's fees, costs, and "all such other relief as the Court deems proper."

Defendant filed a motion to dismiss plaintiff's complaint, arguing that, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) (2014), the Court does not possess subject matter jurisdiction to entertain plaintiff's claims "[b]ecause there is no evidence of a contract between Mr. Harrison and the Government." Defendant contends that plaintiff's complaint "does not allege the elements necessary to establish the existence of either an express or implied-in-fact contract with the United States" and "does not allege any conduct of the parties or circumstances whatsoever that demonstrate a meeting of the minds with an intent to contract." According to defendant, "[e]ven assuming the facts as alleged by Mr. Harrison are true for the purpose of this motion, his claim should fail because he holds his Federal employment position pursuant to appointment and not pursuant to contract." Defendant argues that, if plaintiff was alleging that "the PMF Program, through its incentives and trial appointment, created a binding contract, his argument is rejected by this Court's holding in *Federico v. United States*, 70 Fed. Cl. 378 (2006)." Therefore, defendant argues plaintiff is precluded by his federal employee status from bringing a contract claim related to his employment. Finally, according to defendant, if the court construes the benefits and expectations set forth by statute and regulation for the PMF Program as constituting promises sufficient to establish an implied-in-law contract, the court also does not have jurisdiction over those claims.

Plaintiff filed a response to defendant's motion to dismiss, in which plaintiff, apparently trying to refer to this court, "concedes that the Court of Federal Appeals [sic] apparently has no jurisdiction over implied-in-law contracts and claims for promissory estoppel and that several of the causes of action listed in the initial complaint may fall into some of these categories." Notwithstanding, plaintiff contends that he has "asserted, more generally, the existence of an implied contract created by the nature of the Presidential Management Fellows Program, the de facto practices of the U.S. Small Business Administration, and the repeated assurances offered by his office and by the agency's human resources personnel," (citations omitted), as well as that he has "provided evidence of the existence of an implied-in-fact contract (probably even an express contract) in the attachments to *Plaintiff's Response to Court's Order to Produce Supporting Documents*." (emphasis in original). Plaintiff argues he has sufficiently alleged the existence of an express contract because the agency is required by regulation to execute a written Participant Agreement, OPM Form 1301 (Participant Agreement) with each PMF participant that clearly identifies expectations of the position. In the above captioned case, however, neither the plaintiff nor the defendant was able to produce for the court a signed PMF Participant Agreement for plaintiff. Plaintiff offered an unsigned, generic, PMF Participant Agreement pulled from the PMF Website and indicated "[i]ts provisions should be substantially similar to the document that was executed by the Plaintiff and his supervisor." Plaintiff contends that, regardless, "the boilerplate language of OPM Form 1301 can be construed as an implied-in-fact contract." Plaintiff also points to OPM's website, the letters from the SBA to plaintiff, and "[t]he conduct of both parties . . . the Plaintiff showing up at the agency and performing

his assigned duties each day, the agency making regular payments every two weeks, and both parties creating an Individual Development Plan" as evidence of an implied-in-fact contract between the parties.

## DISCUSSION

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."); Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 824 (2013); see also Arbaugh v. Y & H Corp., 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506–07)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise sua sponte, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006); see also Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971

(Fed. Cir.) ("This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue."), reh'g and reh'g en banc denied, 614 F.3d 1330 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 909 (2011).

Pursuant to the RCFC and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2014); Fed. R. Civ. P. 8(a)(1), (2) (2015); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003). If a defendant or the

court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); see also Land v. Dollar, 330 U.S. 731, 735 n. 4 (1947); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 404–05 (1994).

> The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,]

372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

In somewhat overlapping, and sometimes inconsistent, statements, plaintiff asserts that his complaint sufficiently alleges an express contract and "the existence of 'an implied contract' created by 'the nature of the Presidential Management Fellows Program, the de facto practices of the U.S. Small Business Administration, and the repeated assurances offered by his office and by the agency's human resources personnel.'" In addition, plaintiff asserts that he has "provided evidence of the existence of an implied-in-fact contract (probably even an express contract) in the attachments to *Plaintiff's Response to Court's Order to Produce Supporting Documents.*" (emphasis in original). As noted above, plaintiff argues that, because the agency is required by regulation to execute a written Participant Agreement, OPM Form 1301 with each PMF participant that clearly identifies expectations of the position, plaintiff has sufficiently alleged the existence of an express contract. He further argues that, regardless, the generic "boilerplate language of OPM Form 1301 can be construed as an implied-in-fact contract." Plaintiff also contends there is evidence of an implied-in-fact contract between the parties, and points to the OPM website, the letters from the SBA to plaintiff, and "[t]he conduct of both parties . . . the Plaintiff showing up at the agency and performing his assigned duties each day, the agency making regular payments every two weeks, and both parties creating an Individual Development Plan." Defendant, however, argues that "there is no evidence of a contract between Mr. Harrison and the Government," and that plaintiff's complaint "does not allege the elements necessary to establish the existence of either an express or implied-in-fact contract with the United States" and "does not allege any conduct of the parties or circumstances whatsoever that demonstrate a meeting of the minds with an intent to contract."

According to long established precedent decided in the United States Court of Appeals for the Federal Circuit, "there is a 'well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.'" Hamlet v. United States, 63 F.3d 1097, 1101 (Fed. Cir.) (quoting Chu v. United States, 773 F.2d 1226, 1229 (Fed. Cir. 1985)), reh'g denied and en banc suggestion declined (Fed. Cir. 1995), cert. denied, 517 U.S. 1155 (1996); see also Doe v. United States, 513 F.3d 1348, 1355 (Fed. Cir. 2008) ("To the extent that the appellants seek to enforce their employment rights under the FLSA or Title 5 through a breach of contract claim, the Court of Federal Claims correctly dismissed that claim for lack of subject matter jurisdiction because, as federal employees, the appellants 'derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.'" (quoting Chu v. United States, 773 F.2d at 1229)); Adams v. United States, 391 F.3d 1212, 1221 (Fed. Cir. 2004) ("Like all federal employees, Appellants served by appointment. The terms of their employment and compensation, consequently, were governed exclusively by statute, not contract."), cert. denied, 546 U.S. 811 (2005); Collier v. United States, 379 F.3d 1330, 1332 (Fed. Cir. 2004) ("As an appointed employee, Mr. Collier did not have an employment contract with the government, and did not acquire such a contract through his job description or performance plan."); Kania v. United States, 227 Ct. Cl. 458, 464–65, 650 F.2d 264, 268 ("Thus it has long been held that the rights of civilian and military public employees against the government do not turn on contract doctrines but are matters of legal status even where compacts are made."), cert. denied, 454 U.S. 895 (1981).

Likewise, judges of this court have frequently indicated that, "it is presumed that 'absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.'" Charnetski v. United States, 111 Fed. Cl. 185, 188 (2013) (quoting Chu v. United States, 773 F.2d at 1229); see also Piper v. United States, 90 Fed. Cl. 498, 503 (2009), aff'd, 374 F. App'x 957 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 936 (2011); Anderson v. United States, 64 Fed. Cl. 759, 762 (2005) ("If the plaintiffs are appointed employees, with no contractual aspects to their employment relationship, their case must be dismissed for lack of subject matter jurisdiction."); Calvin v. United States, 63 Fed. Cl. 468, 472 (2005) ("In other words, there is a 'presumption that federal employees hold their positions pursuant to appointment[ ] rather than by contract.'" (quoting Collier v. United States, 56 Fed. Cl. 354, 357 (2003), aff'd, 379 F.3d 1330 (Fed. Cir. 2004))) (alteration in Calvin v. United States); Berry v. United States, 27 Fed. Cl. 96, 100 (1992) ("The contract liability enforceable under the Tucker Act does not extend to every agreement, understanding, or compact entered into by the Government. It is well established that the rights of civilian and military public employees against the Government do not turn on contract doctrines, but are matters of legal status.") (citations omitted); Darden v. United States, 18 Cl. Ct. 855, 859 (1989) (finding that the most that can be said about plaintiff's job description as a Grade 5 personnel clerk "is that plaintiff was apprised of her

forthcoming responsibilities and the salary to which she was entitled for the performance of those duties. It may very well have created certain procedural rights, but under no circumstance may it be viewed as giving rise to a contractual relationship sufficient to create jurisdiction under the Tucker Act.").

The Federal Circuit summarized the status of a federal employee who holds an appointment as follows:

> federal workers serve by appointment, and their rights are therefore a matter of legal status even where compacts are made. In other words, their entitlement to pay and benefits must be determined by reference to the statutes and regulations governing [compensation], rather than to ordinary contract principles. Though a distinction between appointment and contact may sound dissonant in a regime accustomed to the principle that the employment relationship has its ultimate basis in contract, the distinction nevertheless prevails in government service. Applying these doctrines, courts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel. These cases have involved, _inter alia_, promises of appointment to a particular grade or step level, promises of promotion upon satisfaction of certain conditions, promises of extra compensation in exchange for extra services, and promises of other employment benefits.

Adams v. United States, 391 F.3d at 1221 (quoting Kizas v. Webster, 707 F.2d 524, 535 (D.C. Cir. 1983), cert. denied, 464 U.S. 1042 (1984)) (alteration in Adams v. United States).

A federal employee's "'relationship with the Government cannot be simultaneously governed by both an appointment and a contract.'" Charnetski v. United States, 111 Fed. Cl. at 188 (quoting Collier v. United States, 56 Fed. Cl. at 356); see also Piper v. United States, 90 Fed. Cl. at 503; Calvin v. United States, 63 Fed. Cl. at 472 ("While the Supreme Court has not explicitly held that employment by appointment and by contract are mutually exclusive, its reasoning implies such a principle, and courts have interpreted [Army and Air Force Exchange Serv. v.] Sheehan[, 456 U.S. 728 (1982)] and like precedents to require mutual exclusivity"). In Anderson v. United States, plaintiffs argued "that at least some aspects of their employment are governed by contract, and they assert that they _can_ simultaneously be party to both types of relationships." Anderson v. United States, 64 Fed Cl. at 762. (emphasis in original). The Anderson court, however, rejected this argument, finding that "[t]his proposition has been repeatedly rejected both by the Federal Circuit and the Court of Federal Claims." Anderson v. United States, 64 Fed. Cl. at 762–63. Ultimately, the Anderson court held, therefore, that "[t]he law is clear on this point: the plaintiffs cannot be both government employees and contractual employees; the two are mutually exclusive." Anderson v. United States, 64 Fed. Cl. at 762–63.

Moreover, "a presumption exists that federal employees serve by appointment, not by contract." Anderson v. United States, 64 Fed. Cl. at 762; see also Chu v. United States, 773 F.2d at 1229 ("[A]bsent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government."); Calvin v. United States, 63 Fed. Cl. at 472 ("In other words, there is a 'presumption that federal employees hold their positions pursuant to appointment[ ] rather than by contract.'" (quoting Collier v. United States, 56 Fed. Cl. at 357)) (alteration in Calvin v. United States). In other words, if plaintiff's claim is based on a breach of contract theory and his "employment was by 'appointment,' a breach of contract action against the government would be precluded." Hamlet v. United States, 63 F.3d at 1101 (citations omitted); see also Piper v. United States, 90 Fed. Cl. at 503; Calvin v. United States, 63 Fed. Cl. at 473.

Although a contract between the government and an individual employee is possible, it must be specifically spelled out as a contract by a person having authority to enter into a contract. See Kania v. United States, 227 Ct. Cl. at 465, 650 F.2d at 268; see also United States v. Hopkins, 427 U.S. 123, 128–30 (1976); Walton v. United States, 213 Ct. Cl. 755, 756 (1977). As a general proposition:

> [T]he law requires that a Government agent who purports to enter into or ratify a contractual agreement that is to bind the United States have actual authority to do so. See Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997). The corollary is that any party entering into an agreement with the Government accepts the risk of correctly ascertaining the authority of the agents who purport to act for the Government . . . .

Monarch Assurance P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001).

The key issue in the present case is whether Mr. Harrison's employment was governed by appointment or by contract. When determining whether a government employee is serving by contract or appointment, the court looks to the relevant statutory language and implementing regulations, as well as to the hiring documents. See Hamlet v. United States, 63 F.3d at 1101; Charnetski v. United States, 111 Fed. Cl. at 188; Piper v. United States, 90 Fed. Cl. at 503; Calvin v. United States, 63 Fed. Cl. at 472. In Calvin v. United States, the Transportation Security Administration gave written offers of conditional employment to the plaintiffs which contained salaries and positions. Calvin v. United States, 63 Fed. Cl. at 470–71. The Calvin plaintiffs brought a breach of contract claim after failing to receive the listed salaries and positions. See id. The court looked to the applicable statute and held that it allowed plaintiffs' employment to be governed either by appointment or contract. See id. at 472. The Calvin court then turned to the hiring documents, which included an Office of Personnel Management Standard Notification of Personnel Action Form, SF-50, and an "Appointment Affidavit." Id. at 473. The Calvin court held, in light of this evidence, and "the principle that 'federal employees

do not have contractual relationships with the government, barring an explicit agreement to the contrary executed by a federal officer who has authority to contract,' Darden v. United States, 18 Cl. Ct. 855, 859 (1989), plaintiffs are appointees and their claims of breach of employment contract are precluded." Calvin v. United States, 63 Fed. Cl. at 473.

In the case currently before the court, plaintiff has failed to demonstrate that he served by contract, and not by appointment. See Anderson v. United States, 64 Fed. Cl. at 762. In fact, the regulatory language and relevant hiring documents indicate that plaintiff's employment was by appointment, and not by contract. The PMF Program operates under the auspices of the Pathways Program. The Pathways Program was created by Executive Order 13562 on December 27, 2010 and is regulated by the Office of Personnel Management (OPM). Section 362 of Title 5 of the CFR elaborates on the terms of the Pathways Program, see 5 C.F.R. § 362 (2013), and CFR sections 362.401 through 362.409 specifically govern the PMF Program, including the administration of the program, and the evaluation, selection, and termination of its participants. See generally, 5 C.F.R. §§ 362.401–409 (2013). The regulatory language establishes that Presidential Management Fellows, such as plaintiff, are employed by appointment. Section 362.401 defines a "Presidential Management Fellow (PMF) or Fellow" as "an individual appointed, at the GS–9, GS–11, or GS–12 level (or equivalent under a non-GS pay and classification system such as the Federal Wage System), in the excepted service under §213.3402(c) of this chapter." 5 C.F.R. § 362.401 (emphasis in original). Indeed, section 362.404(a)(2) mandates that "[a]n agency must appoint a PMF using the excepted service appointing authority provided by §213.3402(c) of this chapter." 5 C.F.R. § 362.404(a)(2). Section 213.3402(c) of Title 5 of the CFR also provides that, for positions in the PMF Program:

> Appointments under this authority may not exceed 2 years except as provided in subpart D of part 362 of this chapter. Agencies may make initial appointments of Fellows at the GS–09, GS–11, or GS–12 level (or equivalent under another pay and classification system such as the FWS [Federal Wage System]), depending on the candidates' qualifications and the positions' requirements. Appointments must be made in accordance with the provisions of subpart D of part 362 of this chapter.

5 C.F.R § 213.3402(c) (2013). The court notes the repeated use of the word "appointment" in the above quotations from the applicable regulations.

Even the documents that plaintiff submitted to the court further document and establish that plaintiff's employment was by appointment, not contract. In plaintiff's own filing introducing documents for submission to this court, plaintiff references that his filing includes the "actual documents that the Plaintiff signed on July 1, 2013 upon his appointment to the federal service." Moreover, the documents also are replete with references to the PMF position as an appointment. For instance, the PMF Program website references the position as a "two-year appointment." The letter from Ms. Wyche of the SBA references the position as an "excepted service position," and explains that

"[y]ou must provide proof of citizenship in order to be appointed to this position," and "[f]ailure to provide proof of citizenship will result in a delay in your appointment." The Wyche letter concludes by providing plaintiff the SBA contact information "[i]f you have any questions concerning your appointment" and by offering plaintiff "[b]est wishes in your new appointment." The letter from the SBA's Ms. Bean, which plaintiff indicates he received and appears to have signed, explicitly states that the position is by appointment: *"The Presidential Management Fellows position is an excepted service appointment."* (emphasis in original). The Bean letter explained that "[u]pon entrance on duty, your appointment will be subject to the successfully [sic] completion of a two-year probationary period . . . [,]" and "[u]pon your acceptance of this offer, an effective date of your appointment will be established." The **"PRESIDENTIAL MANAGEMENT FELLOWS PROGRAM Guide for Agencies"** described at length instructions for agencies regarding appointing PMF Fellows, including the entirety of Chapter 4, titled "AGENCY SELECTION AND APPOINTMENT," which explained, in depth, instructions for "**Appointment Eligibility**," "**Application of Hiring Preferences**," "**Appointing Fellows**," "**Hiring Incentives**," "**Appointment Extensions and Deferrals**," and "**Recording the Appointment**," under the regulations governing the PMF Program at 5 C.F.R. § 362. (all emphasis and capitalization in original). The "Pathways Programs Memorandum of Understanding" between OPM and SBA provided that "Section 362.103 of 5 Code of Federal Regulations (CFR) authorized agencies to make appointments to positions placed in the excepted service, pursuant to the Pathways Programs." Moreover, the Memorandum of Understanding instructed that, regarding "**Extension of a Recent Graduates or Presidential Management Fellows Program Appointment (PMF)**" (emphasis in original), "Appointments for the SBA Pathways Recent Graduates Program are one year and for PMFs, two years. SBA acknowledges that circumstances may arise that impact the appointment period requirement."

In addition, plaintiff's Standard Form 50, "NOTIFICATION OF PERSONNEL ACTION," (capitalization in original), effective July 1, 2013, and issued by the SBA upon plaintiff's hiring, also demonstrates that the plaintiff's employment was by appointment. Plaintiff's Standard Form 50 upon hiring indicated that he was appointed to the excepted service, that his appointment was intended to continue for two years, but that "IF PERFORMANCE IS NOT SATISFACTORY OR YOU FAIL TO SATISFACTORILY COMPLETE PROGRAM, EMPLOYMENT WILL BE TERMINATED. APPOINTMENT IS SUBJECT TO COMPLETION OF ONE YEAR TRIAL PERIOD BEGINNING 07/01/13." (capitalization in original). Moreover, as further stated in the Standard Form 50 for plaintiff's hiring, it appears plaintiff executed an appointment affidavit on 7/1/2013. See Piper v. United States, 90 Fed. Cl. at 505 ("[T]he language of the SF–50 [Standard Form 50] explicitly reflects the appointive nature of plaintiff's employment."); Calvin v. United States, 63 Fed. Cl. at 473 (The Standard Form 50 "has been considered one 'of the usual indicia of civil service status.'" (quoting Horner v. Acosta, 803 F.2d 687, 694 (Fed. Cir. 1986)). Finally, the June 11, 2014 termination letter also references plaintiff's employment as an appointment and provides: "On July 1, 2013, you received an Excepted Service appointment as a Veterans Affairs Specialist, GS-1101-11, step 1, in the U.S. Small Business Administration, Office of Veterans Affairs. Your appointment

was subject to the successful completion of a two-year trial period beginning July 1, 2013."

Plaintiff alleges in his response to the court's request for supporting documents that he had not seen the Standard Form 50 when he was hired, titled Notification of Personnel Action. Plaintiff's claim, however, even if correct, does not render the Standard Form 50 invalid. The court finds persuasive the reasoning in Piper v. United States, in which a judge of this court found:

> According to the procedures adopted by the OPM, agencies are required to provide newly hired employees with a copy of the SF–50 reflecting their appointment. U.S. Office of Personnel Mgmt., *Guide to Processing Personnel Actions* §§ 1–3(b)(1), 4–7 (2009), http://www.opm.gov/feddata /gppa/gppa.asp. However, as the United States Court of Appeals for the Federal Circuit noted in *Hardy v. Merit Systems Protection Board*, an SF–50 "is merely an administrative record of the accomplished action." 13 F.3d 1571, 1575 (Fed. Cir. 1994). Thus, the issuance and receipt of an SF–50 is not the linchpin to federal employment. *See Grigsby v. U.S. Dep't of Commerce*, 729 F.2d 772, 775 (Fed. Cir. 1984) (noting that "while an employee's appointment cannot exist without execution of the appropriate appointment form," the execution of such a form is not "a controlling or sufficient element of the appointment"). In the present case, assuming plaintiff is correct that he did not receive the appointive SF–50, the facts demonstrate that the TSA's failure to provide plaintiff with the form did not preclude plaintiff from beginning work or receiving pay. Therefore, it is logical to presume that the TSA actually issued the SF–50, even if it did not provide a copy to plaintiff. *Cf. U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10, 122 S. Ct. 431, 151 L.Ed.2d 323 (2001) (noting that "a presumption of regularity attaches to the actions of Government agencies"). Accordingly, the fact that plaintiff did not receive a copy of the SF–50 does not render the SF–50 invalid.

Piper v. United States, 90 Fed. Cl. at 507. Similarly, Mr. Harrison began and continued to work at and accept pay from the SBA for the length of his employment, until terminated.

In his response to defendant's motion to dismiss, plaintiff argues that "the agency is required by 5 CFR § 362.106 to 'execute a written Participant Agreement with each Pathways Participant that clearly identifies expectations,'" (quoting 5 C.F.R. § 362.106 (2013)), and this Participant Agreement creates an implied-in-fact, if not an express, contract. Although neither defendant nor plaintiff submitted the actual Participant Agreement to the court, plaintiff alleges he signed such an agreement with the SBA. As noted above, plaintiff instead submitted a generic Participant Agreement, pulled from the PMF website, and argues that the language and provisions "should be substantially similar to the document that was executed by the Plaintiff and his supervisor." Upon review, the court finds that the language of the generic Participant Agreement actually

further supports the appointive nature of plaintiff's employment. The document explicitly references and cites to the regulations governing the PMF Program, explaining for instance that "[o]ne of the regulatory requirements is for a Pathways participant to enter into a Participant Agreement with the hiring agency" per section 362.106 and that "[t]his agreement fulfills the regulatory requirements."[7] The generic Participant Agreement also explicitly refers to appointment in numerous places, including referencing "the appointing agency," indicating that "[u]pon appointment, the Fellow should work with their Supervisor on identifying assignment of a Mentor," and requesting the "Appointee's Full Name," "Appointing Agency/Sub-Agency," and "**Appointment Date(s)**." (emphasis in original). The Participant Agreement also provides one section for the "appointing agency" to enter any additional agency requirements for a participant's eligibility for conversion to a term or permanent position and another section for "**Other Program\Appointment Requirements (if any)**," as well as requests signatures for the Fellow to acknowledge "that as a condition of employment, a Fellow's appointment expires at the end of the 2-year fellowship." (emphasis in original). Thus, the language of the Participant Agreement, not only fails to rebut the presumption that plaintiff was "appointed to" his position, but actually further supports the court's conclusion that the plaintiff's employment was by appointment, not by contract. See Hamlet v. United States, 63 F.3d at 1102 ("Nothing in the record rebuts the presumption that a federal employee is employed by appointment and not by contract or quasi-contract."). Similarly, nothing in the record supports plaintiff's allegations that an express, implied-in-fact, or option contract came into existence regarding his employment, as opposed to his appointment as a Presidential Management Fellow.

Moreover, even if plaintiff's employment could be considered contractual in nature, which it was not, this court would still lack jurisdiction over plaintiff's breach of contract claims. To have privity of contract with the United States government, and, therefore, invoke the jurisdiction of the United States Court of Federal Claims for a breach of contract claim, plaintiff "must show that either an express or implied-in-fact contract underlies [the] claim." Trauma Serv. Grp. v. United States, 104 F.3d at 1325. "For there to be an express contract, the parties must have intended to be bound and must have expressed their intention in a manner capable of understanding. A definite offer and an unconditional acceptance must be established." Russell Corp. v. United States, 210 Ct. Cl. 596, 606, 537 F.2d 474, 481 (1976), cert. denied, 429 U.S. 1073 (1977). Implied-in-fact contracts are agreements "'"founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."'" Trauma Serv. Grp. v. United States, 104 F.3d at 1325 (quoting Hercules, Inc. v. United States, 516 U.S. 417, 424 (1996) (quoting Balt. & Ohio R.R. Co. v. United States, 261 U.S. 592, 597 (1923))); see also Kam-Almaz v. United States, 682 F.3d 1364, 1368 (Fed. Cir. 2012); Bank of Guam v. United States, 578 F.3d 1318, 1329 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1326); Bay View, Inc. v. United States, 278 F.3d 1259, 1265–66 (Fed. Cir. 2001), reh'g and reh'g en banc

---

[7] In the regulations, a "*Pathways Participant*" is defined as "any individual appointed under a Pathways Program." 5 C.F.R. § 362.102 (2013) (emphasis in original).

denied, 285 F.3d 1035 (Fed. Cir.), cert. denied, 537 U.S. 826 (2002); Westlands Water Dist. v. United States, 109 Fed. Cl. 177, 203 (2013); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 728 (2010) (citing Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 597), appeal dismissed, 454 F. App'x 900 (Fed. Cir. 2011); Russell Corp. v. United States, 210 Ct. Cl. at 609, 537 F.2d at 482. Such an agreement will not be implied "unless the meeting of minds was indicated by some intelligible conduct, act or sign." Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 598; see also Russell Corp. v. United States, 210 Ct. Cl. at 609, 537 F.2d at 48.

Plaintiff's complaint fails to show that "the meeting of minds was indicated by some intelligible conduct, act or sign" as to the length of the fellowship for the entirety of a two year or longer period. See Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 598. To the contrary, the regulations and the hiring documents that plaintiff submitted to the court reflect that the position was clearly for a trial period and could be terminated by the agency. Nothing in the regulations mandates or suggests that plaintiff's appointment was required to continue for a specific duration. Section 362.105(g) of Title 5 of the CFR, covering all Pathway Programs, including the PMF program, states regarding the length of appointments that "[e]xcept as provided in subpart B, Recent Graduate and PMF appointments under this authority may not exceed 2 years plus any agency-approved extension of up to 120 days." 5 C.F.R. § 362.105(g) (2013). This section sets a maximum, and does not guarantee a full two year appointment. Regarding termination, the regulations state "[a]n agency may terminate a Pathways Participant for reasons including misconduct, poor performance, or suitability under the provisions of this chapter." 5 C.F.R. § 362.105(h). Likewise, the specific PMF Program regulations at subpart D of part 362 provide that "[a]n agency may make 2-year appointments to the PMF Program," and the "agency must appoint a PMF using the excepted service appointing authority provided by § 213.3402(c) of this chapter." 5 C.F.R. § 362.404(a)(1)–(2). Section 213.3402(c) states that, for appointments under the PMF program, "[a]ppointments under this authority may not exceed 2 years except as provided in subpart D of part 362 of this chapter," and "[a]ppointments must be made in accordance with the provisions of subpart D of part 362 of this chapter." 5 C.F.R. § 213.3402(c). The PMF Program regulations also state that "[t]he duration of the PMF appointment in the excepted service is a trial period," 5 C.F.R. § 362.404(d), and that "[a]n agency may terminate a Fellow for reasons related to misconduct, poor performance, or suitability," 5 C.F.R. § 362.408(a)(1).

Furthermore, the hiring documents expressly reflect that the position was for a trial period and could be terminated by the agency. The Standard Form 50 upon plaintiff's hiring provided that his appointment was intended to continue for two years, but that "IF PERFORMANCE IS NOT SATISFACTORY OR YOU FAIL TO SATISFACTORILY COMPLETE PROGRAM, EMPLOYMENT WILL BE TERMINATED. APPOINTMENT IS SUBJECT TO COMPLETION OF ONE YEAR TRIAL PERIOD BEGINNING 07/01/13." (capitalization in original). The June 11, 2014 termination letter summarized and provided, in relevant part:

Your appointment was subject to the successful completion of a two-year trial period beginning July 1, 2013. The trial period is the final step in the examination process of an employee. It is the time in which an employee has the opportunity to demonstrate, through actual performance and/or conduct, their fitness or qualifications for continued employment.

The June 11, 2014 letter continues:

During this trial period, it has been determined that your continued employment does not promote the efficiency of the service. Therefore, in accordance with Title 5 of the Code of Federal Regulations §315.804, you are hereby notified that your employment with the U.S. Small Business Administration (SBA) is being terminated effective close of business **Friday, June 13, 2014** for unacceptable conduct.

(emphasis in original).

The record also reflects a Standard Form 52 "REQUEST FOR PERSONNEL ACTION," which requested "TERMINATION" of plaintiff with effective date of June 13, 2014. (all capitalization in original). The Standard Form 52 indicated the reason as "Terminated during probationary period," and cited the legal authority for termination as "Reg 315.804 Mix," 5 C.F.R. § 315.804 (2014). In addition, the record contains a Standard Form 50, titled "NOTIFICATION OF PERSONNEL ACTION," which similarly indicated that the "Nature of Action" is "TERM [Termination] DURING PROB/TRIAL PERIOD" with effective date of June 13, 2014 and similarly cited "REG 315.804 MIX," 5 C.F.R. § 315.804, as the relevant legal authority. (all capitalization in original).

The June 11, 2014 letter, the Standard Form 52 and the Standard Form 50 in the record regarding plaintiff's termination cite to section 315.804 of Title 5 of the CFR, which covers "**Termination of probationers for unsatisfactory performance or conduct,**" (emphasis in original), and provides:

(a) Subject to § 315.803(b), when an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action. The information in the notice as to why the employee is being terminated shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct.

(b) Probation ends when the employee completes his or her scheduled tour of duty on the day before the anniversary date of the employee's appointment. For example when the last workday is a Friday and the anniversary date is the following Monday, the probationer must be separated before the end of the tour of duty on Friday since Friday would

be the last day the employee actually has to demonstrate fitness for further employment.

5 C.F.R. § 315.804 (2014).

As discussed above, a federal employee's "'relationship with the Government cannot be simultaneously governed by both an appointment and a contract.'" Charnetski v. United States, 111 Fed. Cl. at 188 (quoting Collier v. United States, 56 Fed. Cl. at 356); see also Piper v. United States, 90 Fed. Cl. at 503; Calvin v. United States, 63 Fed. Cl. at 472, 474. The applicable regulations and plaintiff's hiring documents make clear that the nature of Mr. Harrison's employment was by appointment, not by contract. Because plaintiff's employment was by appointment, and not by contract, the court does not have subject-matter jurisdiction over plaintiff's claims of breach of an express, implied-in-fact, or option contract.

Plaintiff also alleges in his complaint that "[t]he Defendant's termination of the Plaintiff to avoid providing the other inducements that he was offered as part of the two-year program constitutes a breach of the implied covenant of good faith and fair dealing." Because plaintiff's employment was by appointment, no contract came into existence, and plaintiff's breach of the implied covenant of good faith and fair dealing claim also must fail. See Scott Timber Co. v. United States, 692 F.3d 1365, 1372 (Fed. Cir. 2012) ("'[B]ecause the existence of th[e] covenant [of good faith and fair dealing] depends on the existence of an underlying contractual relationship, there is no claim for a breach of this covenant where a valid contract has not yet been formed.'" (quoting Mountain Highlands, LLC v. Hendricks, 616 F.3d 1167, 1171 (10th Cir. 2010))), reh'g and reh'g en banc denied, 499 F. App'x 973 (Fed. Cir. 2013) (alterations added); see also Night Vision Corp. v. United States, 68 Fed. Cl. 368, 389 (2005) ("Clearly, the case has at its predicate the existence of a valid, mutually assented-to contract, for which a covenant arises that proscribes the government from interfering with reasonable expectations flowing from that particular contract."), aff'd, 469 F.3d 1369 (Fed. Cir. 2006), cert. denied, 550 U.S. 934 (2007).

Finally, plaintiff has requested "a hearing so that the Court may hear oral arguments on the motion prior to rendering a decision." Trial judges are given broad discretion to control and manage their dockets, including with respect to procedural matters. See, e.g., Amado v. Microsoft Corp., 517 F.3d 1353, 1358 (Fed. Cir. 2008) (citing Nolan v. de Baca, 603 F.2d 810, 812 (10th Cir. 1979), cert. denied, 446 U.S. 956 (1980)); Nutrinova Nutrition Specialties & Food Ingredients GMBH v. Int'l Trade Comm'n, 224 F.3d 1356, 1360 (Fed. Cir. 2000). "[T]he parties' right to be heard may be fulfilled by the court's review of the briefs and supporting affidavits and materials submitted to the court." Geear v. Boulder Cmty. Hosp., 844 F.2d 764, 766 (10th Cir.), cert. denied, 488 U.S. 927 (1988); see also Toquero v. I.N.S., 956 F.2d 193, 196 n.4 (9th Cir. 1992) ("It is well-settled that oral argument is not necessary to satisfy due process."); Lake at Las Vegas Investors Grp. v. Pac. Malibu Dev. Corp., 933 F.2d 724, 729 (9th Cir.) (affirming the trial court and discussing the court's interpretation of a local District Court rule, finding no prejudicial error based on the denial of oral argument in a

summary judgment motion because the party "had the opportunity to apprise the district court of any arguments it believed supported its position . . . ."), reh'g denied (9th Cir. 1991), cert. denied, 503 U.S. 920 (1992). Therefore, a trial court is not required to hold a hearing, but may do so if the court believes the hearing would assist the court to resolve the case. The decision of whether or not to hold oral argument is made in each case, based on the filings and issues raised in that particular case. In the above captioned case, the court does not believe holding oral argument on the defendant's motion to dismiss is necessary to help the court to reach its decision. As such, the court denies plaintiff's request for a hearing.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is, hereby, **GRANTED**. Plaintiff's complaint is **DISMISSED**, without prejudice. The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**